899 A.2d 1099

**OFFICE OF DISCIPLINARY COUNSEL, Petitioner,**

v.

**Michael RADBILL, Respondent.**

**Disciplinary Board No. 113 DB 2004.**

Supreme Court of Pennsylvania.

Argued May 8, 2006.

Decided June 19, 2006.

Richard Hernandez, Esq., Paul J. Killion, Esq., Philadelphia, for Office of Disciplinary Counsel.

Michael Radbill, Esq., for Michael Radbill, *pro se.*

BEFORE: CAPPY, C.J., and CASTILLE, NEWMAN, SAYLOR, EAKIN, and BAER, JJ.

## ORDER

PER CURIAM.

Following oral argument, the Court adopts the findings of fact, conclusions of law and the reasoning set forth in the attached Report and Recommendation of the Disciplinary Board dated November 21, 2005.

We hereby ORDER that Michael Radbill be and he is disbarred from the Bar of this Commonwealth, retroactive to July 29, 2004, and he shall comply with all the provisions of Rule 217, Pa.R.D.E. It is further ORDERED that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.

Madame Justice Baldwin did not participate in the consideration or decision of this case.

## ATTACHMENT

### REPORT AND RECOMMENDATIONS OF THE DISCIPLINARY BOARD OF THE SUPREME COURT OF PENNSYLVANIA

TO THE HONORABLE CHIEF JUSTICE AND JUSTICES OF THE SUPREME COURT OF PENNSYLVANIA:

Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania ("Board") herewith submits its findings and recommendations to your Honorable Court with respect to the above-captioned Petition for Discipline.

## I. HISTORY OF PROCEEDINGS

On July 29, 2004, the Supreme Court of Pennsylvania entered an order placing Respondent on temporary suspension and referring the matter to the Disciplinary Board. On September 2, 2004, Office of Disciplinary Counsel filed a Petition for Discipline against Michael Radbill, Respondent. The Petition charged Respondent with professional misconduct arising from his conviction in the United States District Court for the Eastern District of Pennsylvania on one count of Health Care Fraud and one count of Fraud and False Statements in connection with a federal tax return. Respondent did not file an Answer to Petition for Discipline.

A disciplinary hearing was held on January 24, 2005 before a District I Hearing Committee comprised of Chair John E. Quinn, Esquire, and Members Sean P. Buggy, Esquire, and David M. Laigaie, Esquire. Respondent appeared *pro se*.

Following the submission of briefs by the parties, the Hearing Committee filed a Report on May 27, 2005, finding that Respondent committed professional misconduct as charged in the Petition for Discipline and recommending that he be disbarred.

Respondent filed a Brief on Exceptions and request for oral argument on June 17, 2005.

Oral argument was held on August 25, 2005, before a three-member panel of the Disciplinary Board chaired by Min S. Suh, Esquire, with Members Louis N. Teti, Esquire and Marc S. Raspanti, Esquire.

This matter was adjudicated by the Disciplinary Board at the meeting on September 12, 2005.

## II. *FINDINGS OF FACT*

The Board makes the following findings of fact:

1. Petitioner, whose principal office is located at Suite 1400, 200 North Third Street, Harrisburg, Pennsylvania, is invested, pursuant to Pa.R.D.E. 207, with the power and duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of said Rules of Disciplinary Enforcement

2. Respondent was born in 1943 and was admitted to practice law in the Commonwealth of Pennsylvania in 1973. His last registered office address is 1800 Callowhill Street, Philadelphia PA 19130–4110. Respondent is subject to the disciplinary jurisdiction of the Disciplinary Board of the Supreme Court.

3. Respondent has no prior record of discipline.

4. On July 21, 2003 the Office of United States Attorney filed in the United States District Court for the Eastern District of Pennsylvania a Criminal Information in the criminal prosecution captioned *United States of America v. Michael Radbill.*

5. On September 18, 2003, Respondent pleaded guilty to one count of Health Care Fraud, in violation of 18 U.S.C. § 1347 and one count of Fraud and False Statements in connection with a federal tax return, in violation of 26 U.S.C. § 7206(1).

6. On January 15, 2004, the Honorable Marvin Katz sentenced Respondent to serve a term of imprisonment of one year and one day and three years of supervised release following Respondent's release from prison; to make restitution in the amount of $261,447.16; and to pay a special assessment of $200.

7. Respondent was placed on temporary suspension from the practice of law by order of the Supreme Court dated July 29, 2004.

8. Respondent's criminal conduct that led to his decision to enter a guilty plea occurred from 1995 through 2000.

9. The investigation undertaken by the United States Attorney's Office produced evidence that showed that from 1995 through November 2000, Respondent represented twenty-nine clients in personal injury cases knowing that those clients were not injured and did not require medical treatment.

10. In those twenty-nine fraudulent personal injury cases, twenty insurance carriers were defrauded and their total loss amounted to $261,447.16.

11. The evidence against Respondent was based, in part, on information received from a cooperating witness, identified as "D.S.", who posed as an accident victim.

i. Respondent filed suit on behalf of D.S., forged the signature of D.S. on court documents, and represented D.S. at an arbitration hearing that took place on September 30, 1998.

ii. Respondent represented D.S. at the arbitration hearing knowing that the treatment records were false and that D.S. had not sustained any injuries.

iii. Respondent directed D.S. to lie to the arbitration panel in order to obtain a recovery.

iv. The arbitration panel awarded D.S. $5,000.

12. The evidence established that Respondent operated his personal injury practice by engaging in the following acts:

i. Respondent paid runners to recruit clients for his personal injury practice;

ii. Respondent's runners also staged "slip and fall" injuries for his clients;

iii. Respondent himself, and through the use of runners, directed Respondent's clients to those medical providers who would falsify treatment records and health care claims; and,

iv. Respondent coached his clients to provide false testimony in connection with the litigation of their personal injury claims in order to obtain a recovery.

13. Over a thirty-year period, Respondent used runners to solicit personal injury cases and knew that the majority of the clients he represented in personal injury cases were not injured.

14. Respondent's federal tax returns for the years 1997 through 2000 contained false information, in that Respondent under-reported his earned income and exaggerated and falsified his business expenses.

15. Respondent concealed his income by negotiating settlement checks at check cashing agencies or by depositing the settlement checks into his personal account as opposed to his escrow account.

16. Respondent claimed as business expenses salaries he was paying to both his wife and his girlfriend, when neither individual worked at Respondent's law office.

17. For the tax years 1997, 1998, and 1999, Respondent reported a taxable income of less than zero; for the tax year 2000, Respondent reported a taxable income of $12,581.

18. Over the tax years 1997 through 2000, Respondent reported less then 24% of his gross income.

19. Respondent's under-reporting of his income and his falsifying and exaggerating business expenses resulted in the United States government incurring a total tax loss of $235,788.

20. Aside from payments allegedly made automatically from wages he earned while in prison, Respondent has not made any payments toward the restitution amount of $261,477.16. Respondent claims an inability to make further payments until the District Court sets a payment schedule.

21. Respondent has not made any payments toward his tax liability since his release from prison.

22. Prior to sentencing, Respondent was required, at the direction of the probation department, to complete a document that requested certain personal financial information. Respondent failed to provide truthful information when completing that document.

23. Respondent did not exhibit sincere remorse for his misconduct.

## III. CONCLUSIONS OF LAW

By his conduct as set forth above, Respondent violated the following Rules of Professional Conduct:

1. Pa.R.D.E. 203(b)(1)—Conviction of a serious crime is grounds for discipline.

2. RPC 8.4(b)—It is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects.

## IV. DISCUSSION

This matter is before the Disciplinary Board on a Petition for Discipline charging Respondent with professional misconduct arising out of his conviction for health care fraud and fraud and false statements in connection with a federal tax return.

As with all attorney discipline matters predicated on a criminal conviction, the sole issue to be resolved is the extent of discipline to be imposed on Respondent. *Office of Disciplinary Counsel v. Eilberg*, 497 Pa. 388, 441 A.2d 1193 (1982). At the hearing Respondent attempted to dispute certain factual admissions he made during his guilty plea colloquy. It is not the function of the Disciplinary Board to retry the criminal case or provide the equivalent of a second opportunity for acquittal. Respondent's conviction is conclusive evidence of the commission of the crime. All relevant aggravating and mitigating circumstances must be considered and evaluated. *Office of Disciplinary Counsel v. Chung*, 548 Pa. 108, 695 A.2d 405 (1997).

Respondent took exception to the Hearing Committee's recommendation of disbarment and argued before the Board at oral argument that he deserves a second chance and should be suspended instead of disbarred. The prime reason

offered by Respondent is that he is 62 years old and wants to be able to practice law with his son, who is in law school. However, review of the record indicates that the Committee's recommendation of disbarment is appropriate in this situation. Respondent, over the course of five years, filed a series of fraudulent cases and defrauded insurers. Respondent described how he ran his law practice, using runners to recruit clients and to stage slip and fall injuries for clients. This is egregious misconduct. At the hearing, Respondent admitted to handling injury cases for clients who were "not really injured" throughout his thirty year career.

I practiced for thirty years. I got into personal injury cases and I told this to the FBI and the United States Postal Service that when I was a young lawyer, they said you're going to get accident cases of people that aren't really hurt, you say they're hurt and you send them to the doctor.

That's not right, okay? And I did it for 30 years and there's a thousand more here in this state that do it, and I told them that, and they said yeah, but you got caught, which I served my time, I didn't make excuses, so that's true.

If I had to do it over again, I would have chosen a different area of law, so no—well, not everybody, maybe about 80 percent or some high percent were not really injured I did it for all my—the majority of my practice was personal injury, and you know.

I'm sorry I did it, and I don't know what else to say, but yeah, that's true. (N.T. 34)

This statement by Respondent is damaging, as by his own admission his law practice consisted of bringing personal injury cases for clients who were not really injured eighty percent of the time. The tenor of his statement does not suggest that he is sorry for his behavior, but rather he is sorry he was caught. The Hearing Committee found that Respondent was not remorseful. Nothing in the record persuades the Board that this finding should not be accepted.

Given Respondent's serious criminal conduct and lack of remorse, the Board is persuaded that disbarment is warrant-

ed, retroactive to Respondent's temporary suspension on July 29, 2004. Respondent is not fit to practice law, as shown by his statements regarding how he conducted his practice over the past several decades. Disbarment is necessary to protect the public and maintain the integrity of the legal system. *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 506 A.2d 872 (1986).

## V. *RECOMMENDATION*

The Disciplinary Board of the Supreme Court of Pennsylvania unanimously recommends that the Respondent, Michael Radbill, be disbarred from the practice of law retroactive to July 29, 2004 the date of his temporary suspension

It is further recommended that the expenses incurred in the investigation and prosecution of this matter are to be paid by the Respondent.

Respectfully submitted,

THE DISCIPLINARY BOARD OF THE SUPREME COURT OF PENNSYLVANIA

By: s/Min S. Suh
Min S. Suh, Board Member

Date: November 21, 2005

Board Members NEWMAN and NORDENBERG did not participate in the September 12, 2005 adjudication.